COURT OF APPEALS
DECISION
DATED AND FILED

August 6, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP355-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2019CF969**

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JORDAN RAMONE HAWKINS,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Rock County: KARL HANSON, Judge.  *Affirmed*.

Before Blanchard, Kloppenburg, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1	PER CURIAM.	Jordan Hawkins appeals a judgment convicting him of robbery (use of force) with use of a dangerous weapon, as a repeater. Hawkins argues that: (1) his right to a speedy trial was violated; (2) the circuit court improperly reconsidered its initial decision suppressing evidence obtained from a cell phone; and (3) the court should have excluded fingerprint evidence under WIS. STAT. § 971.23 (2023-24).[1] We reject these arguments and affirm.

## BACKGROUND

¶2	In November 2018, a masked man armed with a knife robbed a Janesville gas station employee of her purse and fled in a green SUV. Roughly three hours later, police found a stolen green SUV in the driveway of a homeowner who did not know why it was there. Inside were the employee's purse, a knife, a hat, a coat, and several cell phones. DNA from blood on the hat and coat matched Hawkins, and Hawkins later acknowledged that the hat and coat were his.

¶3	The State filed a criminal complaint against Hawkins in September 2019. He was then serving a revocation sentence and awaiting trial in a separate Rock County case, Case No. 2019CF171. The circuit court found that Hawkins consistently wanted Case No. 2019CF171 tried first and for the trial in this case to follow if it did not resolve before trial. Accordingly, no trial date was set in this case until after the trial in Case No. 2019CF171 concluded in February 2023. The cases were otherwise handled together, and each postponement of the trial in Case No. 2019CF171 also deferred the setting of trial here. The scheduling history discussed below therefore includes trial dates in Case No. 2019CF171.

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

¶4      Trial in this case began on August 14, 2023. The State presented evidence that Hawkins' fingerprints were the only prints on the knife that could be identified as belonging to any person and that a cell phone in the SUV contained incoming messages addressed to "Jordan" and a Facebook profile bearing Hawkins' photograph. Hawkins testified that the hat, coat, and phone were his but that they had been stolen, and that he had previously handled the knife at a friend's home. The jury found Hawkins guilty.

## DISCUSSION

### I. Hawkins' constitutional right to a speedy trial was not violated.

#### A. Governing principles and standard of review

¶5      The Sixth Amendment to the United States Constitution and article I, section 7 of the Wisconsin Constitution guarantee an accused the right to a speedy trial. *See* ***State v. Ramirez***, 2025 WI 28, ¶30, 416 Wis. 2d 641, 22 N.W.3d 821. To determine whether the right to a speedy trial was violated, we apply the four-factor test from ***Barker v. Wingo***, 407 U.S. 514, 530 (1972), considering "(1) the overall length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the speedy trial right, and (4) prejudice to the defendant." ***Ramirez***, 416 Wis. 2d 641, ¶30. No factor is dispositive; we balance them under the totality of the circumstances. ***Id.***

¶6      Whether Hawkins' constitutional right to a speedy trial was violated is a question of law that we decide independently. *See **id.***, ¶29. We accept the circuit court's underlying factual and credibility findings unless they are clearly erroneous. ***Id.***

### B. Length of the delay

¶7 The State filed the criminal complaint against Hawkins on September 18, 2019; his initial appearance occurred on September 26, 2019; and trial began on August 14, 2023. Thus, the delay was 1,426 days measured from charging, or 1,418 days measured from the initial appearance. Under either measure, the delay is presumptively prejudicial because it exceeds one year and therefore triggers consideration of the remaining *Barker* factors. *See Ramirez*, 416 Wis. 2d 641, ¶31. The overall length also informs our assessment of the other factors, particularly prejudice, but it does not itself establish a violation. *See id.*, ¶¶31-32, 38.

### C. Reasons for the delay

¶8 We next examine the reasons for the delay to determine "whether the State or the defendant is more to blame for the time that passed from accusation to conviction." *See id.*, ¶39. Delay caused by the defendant is not attributed to the State. *Id.* Likewise, time required for the orderly administration of criminal justice does not count as delay, provided that the ordinary pretrial proceedings occur expeditiously. *Id.* State-attributable delays are categorized as valid, neutral, or deliberate. *Id.*, ¶40. Valid delays are intrinsic to the case itself and do not weigh against the State. *Id.* Neutral delays—including those caused by negligence, court congestion, inadequate resources, or mounting caseloads—weigh against the State, but not heavily. *Id.*, ¶41. Deliberate or bad-faith delays weigh heavily against the State. *Id.* As explained above, the trial dates before February 2023 were dates for purposes of trying Case No. 2019CF171. Because Hawkins wanted that case tried first and for this case to follow, we consider the reasons that those trial dates were

postponed in determining whether the resulting delay in this case weighs against the State.

### 1. September 18, 2019, to March 22, 2020

¶9 During this time, the circuit court held an initial appearance, a preliminary hearing, and a calendar call. These proceedings occurred within the time reasonably required for the orderly administration of criminal justice and therefore do not weigh against the State. *See id.*, ¶39. Hawkins agrees that the first period does not weigh against the State.

### 2. March 22, 2020, to March 15, 2021

¶10 On March 22, 2020, the Wisconsin Supreme Court suspended jury trials because of the COVID-19 pandemic. Rock County resumed the scheduling of jury trials on March 15, 2021, after its operational safety plan was approved. Under *State v. Coleman*, 2025 WI App 7, ¶¶45-57, 415 Wis. 2d 71, 17 N.W.3d 307 (2024), a pandemic closure is attributable to the State for purposes of identifying the cause of delay but is not weighed against the State because it was a reasonable response to a legitimate public emergency.

¶11 Hawkins contends that at least part of this period should count against the State because the circuit courts in neighboring counties, such as Walworth County, resumed jury trials earlier than the courts in Rock County. But the circuit court found that Rock County remained at a high risk after some other counties' risk levels had declined. It also found that Rock County monitored public health data, constructed a temporary courtroom, and could not have held an earlier jury trial without unreasonably risking the health and lives of trial participants. Hawkins does not show that these findings are clearly erroneous. The fact that courts in another

county, facing different local conditions, resumed jury trials earlier does not establish that Rock County's closure should be weighed against the State. Consistent with *Coleman*, this period does not weigh against the State. *See id.*

### 3. March 15, 2021, to September 27, 2021

¶12    Shortly before Rock County resumed jury trials, Hawkins moved on February 23, 2021, to discharge the attorney who represented him in both cases. At the March 11 motion hearing, trial in Case No. 2019CF171 was scheduled for April 12. The circuit court initially stated that it would not change the trial date merely because Hawkins sought new counsel. Defense counsel then explained that Hawkins was requesting a continuance to allow for pretrial motions to be resolved. The prosecutor also advised the court that he had several trials scheduled for April 12 and was unlikely to be available. The court granted Hawkins' request for new counsel and reset trial in Case No. 2019CF171 for September 27. Four days later, on March 15, Rock County resumed jury trials.

¶13    The twenty-eight days from the resumption of jury trials on March 15 to the original April 12 trial date was ordinary time leading up to trial and do not weigh against the State. *See Ramirez*, 416 Wis. 2d 641, ¶39. Hawkins argues that the remaining delay should be attributed to the State because the prosecutor's calendar, rather than his change of counsel, caused the postponement. We disagree that he has shown that this delay should be attributed to the State. Although the prosecutor's conflicting trials may have contributed to the court's decision, as far as the record reflects, Hawkins' request for new counsel and additional time to address anticipated motions made proceeding in Case No. 2019CF171 on April 12 impracticable. Successor counsel was not appointed until April 1, eleven days before trial. The prosecutor's calendar supplied an additional reason to remove the

date, but it did not displace Hawkins' request as the precipitating cause. Because Hawkins wanted this case to follow Case No. 2019CF171, postponing that trial also prolonged this case. We therefore attribute the delay after April 12 to Hawkins. *See Scarbrough v. State*, 76 Wis. 2d 87, 102, 250 N.W.2d 354 (1977).

### 4. September 27, 2021, to April 18, 2022

¶14 Eleven days before the September 27 trial in Case No. 2019CF171, Hawkins' counsel filed a motion seeking to suppress much of the State's evidence in that case. The circuit court found that the scope of the motion required a lengthy evidentiary hearing and extensive argument that could not be completed before September 27. The court therefore removed the trial date from the court's calendar and later reset trial in Case No. 2019CF171 for April 18, 2022. Because Hawkins wanted this case tried only after Case No. 2019CF171 was tried, that postponement also delayed this case.

¶15 Hawkins argues that the circuit court and the prosecutor could have made time for the suppression hearing before September 27 or held it on the first trial day. But the motion, filed eleven days before trial, precipitated the postponement of trial in Case No. 2019CF171, and the time reasonably required to litigate it cannot be charged to the State in this case merely because Hawkins chose to have this case follow Case No. 2019CF171. The resulting delay therefore does not weigh against the State. *See Ramirez*, 416 Wis. 2d 641, ¶¶39-40; *Norwood v. State*, 74 Wis. 2d 343, 357, 246 N.W.2d 801 (1976).

### 5. April 18, 2022, to September 12, 2022

¶16 Before the April 18 trial in Case No. 2019CF171, Hawkins' second attorney withdrew from both cases because he was leaving the State Public

7

Defender's Office, and newly appointed counsel requested more time to prepare. Counsel declined a June 13 trial date in Case No. 2019CF171 as too soon and agreed that September 12 was acceptable. A delay caused by defense counsel is generally attributed to the defendant even when counsel's reason is not the defendant's personal fault. *See* ***State v. Provost***, 2020 WI App 21, ¶39, 392 Wis. 2d 262, 944 N.W.2d 23.

¶17    Hawkins asks us to assign the final six weeks of this period to the State because the prosecutor was unavailable to try Case No. 2019CF171 in August. But the first August date the circuit court offered was August 15, and the record does not establish that defense counsel would have been ready then or at any earlier time before September 12. Nor was the court required to make a detailed day-to-day record regarding its calendar. *See* ***Ramirez***, 416 Wis. 2d 641, ¶47. Because the need to reschedule Case No. 2019CF171 arose from replacement counsel's request for preparation time, counsel accepted the September date, and Hawkins wanted this case to follow Case No. 2019CF171, this period does not weigh against the State.

### 6. September 12, 2022, to February 6, 2023

¶18    The parties agree that the circuit court changed the September 12 trial date in Case No. 2019CF171 to accommodate two other cases. The court later acknowledged that the continuance was "completely on the Court," and trial in Case No. 2019CF171 ultimately began on February 6, 2023. Because this 147-day postponement of Case No. 2019CF171 also prolonged this case, it is attributable to the State. Court congestion is a neutral reason that weighs against the State, but not heavily. *Id.*, ¶¶40-41; ***Coleman***, 415 Wis. 2d 71, ¶34.

8

### 7. February 6, 2023, to June 19, 2023

¶19    After trial concluded in Case No. 2019CF171, the parties agreed to June 19, 2023, as the first trial date in this case. Hawkins concedes that the intervening period was reasonably required to prepare this case for trial. It does not weigh against the State. *See Ramirez*, 416 Wis. 2d 641, ¶39.

### 8. June 19, 2023, to August 14, 2023

¶20    Eleven days before the June 19, 2023, trial, Hawkins' third attorney moved to withdraw because Hawkins had chosen to represent himself. The circuit court found that two trial days might have been sufficient with counsel but would not be sufficient if Hawkins proceeded at trial pro se, and the court reset trial for August 14, 2023. Hawkins objected and said that two days would suffice, but the court was not required to accept his estimate. It also had to account for the State's witnesses, Hawkins' witnesses, and the slower pace reasonably expected of an incarcerated defendant who is not an attorney representing himself in a felony trial.

¶21    The change in representation precipitated the need for a longer trial setting. This period is therefore attributable to Hawkins. *See id.* We also note that, even if it were attributed to the State, the reason was intrinsic to the case and valid, and therefore the period would not weigh against the State. *See id.*, ¶40.

¶22    In sum, Hawkins chose to have this case tried after the trial in Case No. 2019CF171, making the scheduling history in that case relevant to the delay here. Of the periods during which this case awaited trial in Case No. 2019CF171, only the 147 days from September 12, 2022, through February 6, 2023, weigh against the State, and they do so only slightly. The remaining time was reasonably required for ordinary pretrial proceedings or trial preparation, resulted from

pandemic conditions (and therefore did not weigh against the State), followed defense decisions in Case No. 2019CF171, or resulted from Hawkins' later decision to represent himself at trial. *See id.*, ¶¶39-40.

### D. Assertion of the right

¶23    The circuit court stated that Hawkins had not asserted a speedy trial right in this case. The record reflects a more nuanced situation. In early 2022, Hawkins filed pro se bond-related motions referring to the denial of his speedy trial right. In June 2023, after he began representing himself, Hawkins expressly invoked his speedy trial right and objected to another continuance; the court acknowledged that he had "very clearly asserted" a desire to go to trial promptly, at least as of that day. On August 1, 2023, Hawkins moved to dismiss for a constitutional violation of his speedy trial right. We therefore treat Hawkins as having asserted the right.

¶24    Turning to the weight we should give to Hawkins' assertion of his speedy trial right in this case, more than two years after his initial appearance, Hawkins referred to his speedy trial right in support of bond modification rather than requesting an immediate trial date. The circuit court also found that Hawkins had previously withdrawn a statutory speedy trial demand in Case No. 2019CF171 for strategic reasons. Although that withdrawal did not waive his constitutional right in that case, it bears on how consistently he pursued an early trial. His first unequivocal personal demand in this case came in June 2023, less than three months before trial. Under ***Ramirez***, a similarly delayed assertion weighs only slightly in a defendant's favor. *See id.*, ¶50.

¶25    Hawkins' conduct also informs the weight of his assertions. He asked to move an earlier trial date in Case No. 2019CF171, sought replacement counsel before another scheduled trial, filed a broad suppression motion eleven days before

trial in that case, and elected to represent himself eleven days before trial in this case. These choices were his to make, and nothing in the record suggests that he made them in an attempt to avoid going to trial. Nevertheless, their timing and delaying effect temper the evidentiary weight of his later demands for the earliest possible trial. The third factor weighs only slightly in Hawkins' favor.

### E. Prejudice

¶26 We assess prejudice by considering oppressive pretrial incarceration, anxiety and concern, and impairment of the defense. *Id.*, ¶51. Impairment of the defense is the most serious concern. *Id.* Courts generally do not presume prejudice as a matter of law when the delay is less than five to six years. *See id.*, ¶¶52-53 & n.8. Hawkins must therefore identify particularized prejudice.

¶27 Hawkins was incarcerated throughout the delay, but most of that incarceration was not caused by this case. Until February 2022, he was serving a revocation sentence. Thereafter, he was also held on the companion case or awaiting sentencing in that case. Incarceration on other matters does not eliminate the possibility of prejudice because delay may foreclose an opportunity for concurrent sentences. *See Hadley v. State*, 66 Wis. 2d 350, 364-65, 225 N.W.2d 461 (1975). But it is less oppressive than detention caused solely by the pending charge. *See Watson v. State*, 64 Wis. 2d 264, 271, 219 N.W.2d 398 (1974).

¶28 The lost possibility of a concurrent sentence supplies some prejudice, but the record does not establish that a sentence in this case would in fact have been concurrent with the revocation sentence. Moreover, when sentencing Hawkins in the companion case, the circuit court expressly accounted for and offset the delay common to both cases, including the possibility that some incarceration would have been concurrent had trial occurred earlier. These circumstances substantially

11

mitigate any prejudice. Accordingly, the lost possibility of a concurrent sentence weighs in Hawkins' favor, but only slightly.

¶29 Hawkins does not identify any witness who became unavailable, evidence that was lost, memory that materially faded, or any other way in which the passage of time impaired his defense. The circuit court reasonably characterized his claims of anxiety and defense impairment as conclusory. His difficulties investigating and conducting legal research while incarcerated and self-represented were real, but he does not link them to the length of the delay rather than to incarceration and his decision to proceed without counsel.

¶30 Hawkins also argues that the final continuance allowed the State to complete the fingerprint analysis. Even assuming that the continuance enabled the State to obtain the comparison, that circumstance does not establish prejudice under *Barker*. The relevant concern is whether the delay hindered Hawkins' ability to gather evidence, contact witnesses, or otherwise prepare his defense. *See Coleman*, 415 Wis. 2d 71, ¶72. Hawkins identifies no such impairment.

### F. Balancing

¶31 The total delay was substantial, and Hawkins' late assertions of the right and the lost possibility of a concurrent sentence weigh modestly in his favor. On the other side of the balance, 147 days of neutral congestion delay weigh against the State, and none of the delay was deliberate. Much of the remaining time resulted from an extraordinary public health emergency or from defense decisions that postponed the trial in Case No. 2019CF171 and thereby prolonged this case. Hawkins has not shown that delay impaired his defense.

¶32 The comparison to *Ramirez* reinforces our conclusion. There, our supreme court found no violation even after assuming, in Ramirez's favor, that 958 days of neutral delay weighed against the State. *Ramirez*, 416 Wis. 2d 641, ¶¶53-54. Here, the much smaller neutral delay of 147 days weighs against the State. Although Hawkins has identified some potential sentencing prejudice, the companion-case sentence substantially mitigated that prejudice. Moreover, for nearly three years of the delay—from March 2019 to February 2022—Hawkins was serving a revocation sentence and would have been confined regardless of this case. And, as in *Ramirez*, Hawkins delayed unequivocally asserting his right and has shown no impairment of his defense. *See id.*, ¶¶50, 52, 54. Balancing all four factors, we conclude that Hawkins' constitutional speedy trial right was not violated.

¶33 Our conclusion would be the same even if we accepted Hawkins' proposed allocation and assumed that all 845 days he identifies weighed against the State as neutral delay. Those delays would not weigh heavily. Hawkins did not unequivocally demand a trial in this case until shortly before trial, the sentencing court substantially mitigated the lost possibility of concurrent time, and Hawkins has shown no impairment of his defense. In *Ramirez*, our supreme court found no violation even after assuming that 958 days of neutral delay weighed against the State. *Id.*, ¶54. That numerical comparison is not dispositive, but it confirms that the disputed allocation of these periods does not alter the balance here.

## II. The circuit court properly reconsidered its cell phone ruling.

¶34 Hawkins argues that the circuit court erroneously granted the State's motion to reconsider and, on reconsideration, admitted evidence obtained from a cell phone. On the first day of trial, the court heard Hawkins' motion to suppress the contents of a cell phone found in the stolen SUV. An officer testified that the

phone was on and not password protected, and that the officer opened it to identify its owner. Hawkins acknowledged that the phone was his but argued that he had not abandoned it. The court initially granted Hawkins' motion, ruling that, under *Carpenter v. United States*, 585 U.S. 296, 315-16 (2018), police were required to obtain a warrant to access the phone's contents, regardless of whether Hawkins had abandoned the phone.

¶35    The next morning, the State moved for reconsideration. It pointed out that *Carpenter* did not involve abandonment, cited *Riley v. California*, 573 U.S. 373, 401-02 (2014), for the proposition that exceptions to the warrant requirement may apply to cell phones, and provided noncontrolling legal authority addressing searches of abandoned phones. The circuit court agreed that it had interpreted *Carpenter* too broadly, found that under the objective circumstances the phone had been abandoned, and denied the suppression motion. Hawkins challenges reconsideration, not the abandonment finding.

¶36    A circuit court has inherent authority to reconsider a nonfinal ruling before entry of final judgment. *State v. Williams*, 2005 WI App 221, ¶11, 287 Wis. 2d 748, 706 N.W.2d 355; *State v. Davis*, 2023 WI App 25, ¶20, 407 Wis. 2d 783, 991 N.W.2d 491. We review the exercise of that authority for an erroneous exercise of discretion. *Bauer v. Wisconsin Energy Corp.*, 2022 WI 11, ¶11, 400 Wis. 2d 592, 970 N.W.2d 243.

¶37    Hawkins argues that the State neither presented newly discovered evidence nor established a manifest error because its argument for reconsideration relied on persuasive legal authority, rather than controlling legal authority. A manifest error requires more than disagreement with a ruling; it includes a "wholesale disregard, misapplication, or failure to recognize controlling precedent."

14

*Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd.*, 2004 WI App 129, ¶44, 275 Wis. 2d 397, 685 N.W.2d 853 (citation omitted). Here, the court granted reconsideration based on its conclusion that it misinterpreted *Carpenter*, which is controlling authority. Hawkins fails to show that the court unreasonably determined that it would be a manifest error to apply the wrong legal standard and thereby deprive the State of the opportunity to present relevant, admissible evidence.

### III. The fingerprint evidence was disclosed within a reasonable time.

¶38    Hawkins separately argues that the State violated WIS. STAT. § 971.23 by waiting until June 2023 to submit the latent prints from the knife for analysis and then disclosing the resulting report to the defense too close to trial. At the time, the prosecution explained that, while reviewing the physical evidence in preparation for trial, it had discovered that latent prints recovered from the knife had not been analyzed. The prosecution submitted the prints to the crime laboratory, received a report concluding that three prints matched Hawkins, promptly sent the report to Hawkins, and added the analyst to its witness list. Hawkins received the report on July 18, twenty-seven days before the August 14 trial. The circuit court determined that the remaining time allowed Hawkins to review the report and take any responsive action he deemed appropriate.

¶39    WISCONSIN STAT. § 971.23(1)(d)-(e) requires the district attorney, on demand and within a reasonable time before trial, to disclose the witnesses the State intends to call and expert reports made in connection with the case, provided that the materials and information are within the possession, custody, or control of the State. If the State later discovers additional material subject to disclosure, § 971.23(7) requires prompt notice. Whether the State violated these obligations

presents a question of law that we decide independently. *See State v. DeLao*, 2002 WI 49, ¶¶14-15, 252 Wis. 2d 289, 643 N.W.2d 480. Under *DeLao*'s due diligence rule, the question is not whether the prosecutor knew that evidence existed, but whether the prosecutor should have discovered it through the exercise of due diligence. *Id.*, ¶22. The State is therefore charged with disclosing material and information possessed or controlled by persons who participated in the investigation or evaluation of the case and who regularly report, or have reported regarding the particular case, to the prosecutor's office. *Id.*, ¶¶22-24.

¶40 That rule does not establish a discovery violation here. It imputes to the prosecution knowledge of information then in the hands of investigators. But it does not transform the results of an unperformed forensic analysis into information that is deemed to have been within the State's possession, custody, or control. Due diligence would have revealed that the latent prints had not been analyzed, but no report or expert conclusions existed until the crime laboratory performed the analysis. WISCONSIN STAT. § 971.23 governs the disclosure of evidence. It does not prescribe when forensic testing must be conducted. Once the results existed, the State promptly disclosed the report and added the analyst to its witness list. The State therefore complied with its continuing disclosure obligation. *See* § 971.23(7).

¶41 Nor has Hawkins shown that disclosure twenty-seven days before trial was unreasonable. Evidence is disclosed within a reasonable time when the defendant has sufficient time to use it effectively. *State v. Harris*, 2004 WI 64, ¶37, 272 Wis. 2d 80, 680 N.W.2d 737. In *Harris*, the defendant entered a plea approximately two weeks before trial. Because effective use of the undisclosed evidence would have required him to file a motion to admit it and secure experts to challenge the State's expert testimony, our supreme court concluded that the State should have disclosed the evidence by at least that point. *Id.*, ¶38. Here, Hawkins

16

received the report nearly four weeks before trial. He told the circuit court at that time that his incarceration and self-represented status left him insufficient time and resources to retain an expert. But he did not identify an expert he had contacted, request funding for an expert, identify a particular investigation he could not complete, or seek a continuance for that purpose. On this record, Hawkins' generalized assertion does not establish that he lacked sufficient time to review the report, reflect on and then affirmatively investigate its methodology, consider retaining an expert on this topic, prepare to cross-examine the analyst, or seek appropriate relief, such as rescheduling the trial date.

¶42    Because the State promptly disclosed the newly created report and witness information within a reasonable time before trial, no discovery violation occurred. We therefore do not address good cause or harmless error.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

17